**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **MICHAEL MARINO,** | |
| *Plaintiff,* | |
| v. | **CIVIL ACTION NO.: 3:18-cv-1455** |
| **NEXTCARE HOLDINGS, INC.** | |
| *Defendant* | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Michael Marino ("Marino" or "Plaintiff"), by counsel, brings this action against Defendant, NextCare Holdings, Inc. ("NextCare" or "Defendant") and for a cause of action respectfully shows the Court as follows:

**I.**

**INTRODUCTION**

1.01 Plaintiff worked for Defendant from 2012 until his separation in April, 2017, as Regional Vice Resident of Defendant's Eastern region. During the course of Plaintiff's employment, he received, in addition to his base compensation, several grants of stock options as incentive compensation for his performance.

1.02. Each stock option grant awarded to Plaintiff was for a specific term in which the shares listed could be exercised at a specific price. At the time of his separation, Defendant, through its CEO, agreed to extend the exercise date for up to three years from the date of

Plaintiff's separation of employment, which was April 14, 2017. Thus, Plaintiff had until April 17, 2020 to exercise his options.

1.03 On December 15, 2017, Defendant breached the stock option agreement and broke its promise to extend the exercise date for the stock options by unilaterally revoking all of Plaintiff's options without good cause. As a direct and proximate consequence of Defendant's actions, Plaintiff has been monetarily damaged and is therefore seeking compensation in the amount equivalent to the value of the original stock options, plus attorney's fees.

## II.

## PARTIES

2.01 Plaintiff Michael Marino is a citizen of the State of Texas who can be contacted in care of his undersigned counsel.

2.02 Defendant NextCare is a foreign for-profit corporation organized under the laws of Delaware and whose principal offices are located in Phoenix, Arizona. Defendant is qualified to transact business in the state of Texas and can be served through its registered agent, Capital Corporate Services, Inc., 206 E. 9th St., Suite 1300, Austin, TX 78701 – 4411.

## III.

## JURISDICTION AND VENUE

3.01 Pursuant to 28 U.S.C. §1333, jurisdiction lies in the United States District Court for the Northern District of Texas, as this action is between parties of different states and the amount in controversy is in excess of $75,000, exclusive of interest, costs and attorney's fees. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367.

3.02 Venue for all causes of action stated herein lies in the Northern District of Texas because the acts alleged in this Complaint took place, in whole or in part, within the boundaries

of this District pursuant to 28 U.S.C. §1391.

3.03 This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's Texas law claims for breach of contract.

## IV.

## FACTUAL ALLEGATIONS

4.01 Plaintiff worked for Defendant, NextCare, as its Regional Vice-President for Defendant's Eastern region from 2012 until his separation on April 15, 2017. At the time of his hire, Defendant enrolled Plaintiff into its 2012 Equity Incentive Plan under which Plaintiff received various stock option grants.

4.02 These stock grants were issued to Plaintiff pursuant to the parties' Stock Option Agreement invested certain options with Plaintiff until the time of his termination of service.

4.03 As a result of Plaintiff's superior service and performance, Defendant issued Plaintiff various amounts of stock options in 2012, 2014 and 2016. As of 2016, Plaintiff held approximately 170,000 stock options in NextCare stock. (Copies of the stock option grants and Stock Option Agreement are attached hereto collectively as Exhibit A.)

4.04 At the time of Plaintiff's separation in April 2017, Defendant, through its President and CEO John M. Julian, promised in writing to extend the exercise date of Plaintiff's options for an additional three years. (A copy of the stock option extension agreement is attached hereto as Exhibit B.)

4.05 Under the terms of the original stock grant agreement and Plaintiff's separation agreement, Plaintiff agreed that he would not solicit any NextCare employees, nor disclose any trade secrets or confidential business information. Plaintiff abided by these terms and conditions in order to preserve his right to exercise the stock options that he received from Defendant.

4.06  On or about December 15, 2017, Defendant's Chief Legal and Compliance Officer notified Plaintiff that all of the issued stock option grants had been revoked.

4.07  The stated reason for the revocation of the stock options suggested that Plaintiff had violated the non-solicitation agreement set forth in the Stock Option Agreement.

4.08  The non-solicitation agreement provides in pertinent part that Plaintiff will not hire, engage, employ, solicit, take away, induce, protect, induce (either on his behalf or on behalf of another person), any person known or reasonably known by Plaintiff to be an employee or contractor of Defendant.

4.09  Plaintiff had diligently abided by this restriction and sought to avoid any situation which might be construed as a violation of these restrictions.  Specifically, Plaintiff avoided any involvement with Defendant's employees regarding positions of employment with his current employer.

4.10  Following Plaintiff's separation from Defendant, Plaintiff accepted the position with another employer, Hospice Source ("Hospice").  Mr. Jeff West ("West") is Hospice's CEO.

4.11  Mr. Randy Giles, ("Giles") was previously employed by Defendant and knew Plaintiff when they were both employed at NextCare.

4.12  Giles had previously worked for West while he was at Apria Health in 2005. Guiles worked on West's Regional team in Denver, Colorado.  Since leaving Apria, Giles remained in regular contact with West primarily with a view of securing another position wherever West was employed.

4.13  Giles repeatedly reached out to West for potential job positions long before he met Mr. Marino or joined NextCare.  Giles and West repeatedly "pinged" each other via text for 18 months prior to his finally obtaining a position with Hospice in approximately October, 2017.

Giles confirms that Plaintiff played no role whatsoever in his being hired by Hospice.

4.14  West fully substantiates Giles' account that he and Giles have been in constant touch since 2005.  West alone interviewed Giles and made the decision to hire him for Hospice, since he and Mr. Giles had already worked together.

4.15  West also confirms that Plaintiff played no role in the soliciting, engaging, or hiring Mr. Giles away from NextCare.

4.16  While Plaintiff knew Giles during his employment with Defendant, Plaintiff played no role whatsoever in the solicitation or hiring of Giles by Hospice. Consequently, Defendants stated reason that Plaintiff violated the non-solicitation provision of the Stock Option Agreement as grounds for termination of the option grants is error.

4.17  At no time did Plaintiff urge, or even encourage Mr. Giles to leave NextCare in order to work for Hospice.

4.18  Defendant's termination of Plaintiff's stock options on December 15, 2017 was without cause and therefore is in breach of the parties' stock option agreement.

4.19  As a direct and proximate cause of Defendant's actions, Plaintiff has suffered significant monetary damages and has had to retain legal counsel to pursue his claims.

4.20  Plaintiff conservatively estimates that he has sustained monetary losses of approximately $300,000 as a result of the revocation of his options.

**V.**

**FIRST COUNT**

**BREACH OF CONTRACT**

5.01  The foregoing paragraphs of this Petition are incorporated in this Count by reference as fully as if set forth at length herein.

5.02    Plaintiff fully performed his contact with Defendant by expanding his business and generating significant profits for Defendant.

5.03    Defendant's unwarranted revocation of Plaintiff's Stock Options was without good cause and therefore in violation of the parties' Stock Option Agreement.

5.04    Defendant's actions were also breach of its written promise to extend the exercise date of Plaintiff's stock options.

5.05    These actions caused Plaintiff to incur significant monetary damages in excess of $300,000, all of which were reasonably foreseeable as well as other direct, indirect, incidental and consequential damages, both pre-termination and post-termination, for which Plaintiff sues.

5.06    Although Plaintiff has demanded payment of Plaintiff's damages, Defendants have failed and refused to pay same. Therefore, Defendants are liable to Plaintiff for Plaintiff's reasonable and necessary attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code § 38.001, et seq. for which Plaintiff sues.

## VI.

## JURY TRIAL DEMAND

6.01    PLAINTIFF DEMANDS A TRIAL BY JURY.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant NextCare be cited to appear and answer herein, and that on final trial, Plaintiff have and recover the following relief:

1.    Damages for breach of contract;

2.    Prejudgment and post-judgment interest at the maximum amount allowed by law;

3.    All costs of Court; and

4.    Such other and further relief to which Plaintiff may be justly entitled.

Dated: This 6th day of June, 2018

                Respectfully submitted,

                **KILGORE & KILGORE, PLLC**

                By: /s/ Nicholas A. O'Kelly
                   NICHOLAS A. O'KELLY
                   State Bar No. 15241235
                3109 Carlisle
                Dallas, TX 75204-2471
                (214) 969-9099 - Telephone
                (214) 953-0133 - Fax
                nao@kilgorelaw.com

                **ATTORNEY FOR PLAINTIFF**
                **MICHAEL MARINO**

## NEXTCARE HOLDINGS, INC. 2012 EQUITY INCENTIVE PLAN

### STOCK OPTION GRANT NOTICE

NextCare Holdings, Inc. (the "Company") hereby grants to you an Option (the "Option") to purchase shares of the Company's Common Stock under the Company's 2012 Equity Incentive Plan (the "Plan"). The Option is subject to all the terms and conditions set forth in this Stock Option Grant Notice (this "Grant Notice") and in the Stock Option Agreement and the Plan, which are attached to and incorporated into this Grant Notice in their entirety.

| | |
|---|---|
| **Participant:** | Michael Marino |
| **Grant Date:** | September 10, 2012 |
| **Vesting Commencement Date:** | June 1, 2012 |
| **Number of Shares Subject to Option:** | 106,558 |
| **Exercise Price (per Share):** | $0.06 |
| **Option Expiration Date:** | 10 years from the Grant Date (subject to earlier termination in accordance with the terms of the Plan and the Stock Option Agreement) |
| **Type of Option:** | ☐ Incentive Stock Option *■ Nonqualified Stock Option |

**Vesting and Exercisability Schedule:** The Option will vest and become exercisable as follows: one-third (1/3) of the shares subject to the Option will vest and become exercisable on each of the first three anniversaries of the Vesting Commencement Date (i.e., this Option will be fully vested after 36 months from the Vesting Commencement Date), provided that you have not had a Termination of Service prior to any such date. In the event of a Change of Control, all of the unvested shares subject to the Option will automatically vest in full immediately prior to the consummation of the Change of Control.

**Additional Terms/Acknowledgement:** You acknowledge receipt of, and understand and agree to, this Grant Notice, the Stock Option Agreement and the Plan. You further acknowledge that as of the Grant Date, this Grant Notice, the Stock Option Agreement and the Plan set forth the entire understanding between you and the Company or any Related Company regarding the Option and supersede all prior oral and written agreements on the subject.

NEXTCARE HOLDINGS, INC.                      PARTICIPANT

By:_____          _____
Name: John M. Julian                         Michael Marino
Title: President and Chief Executive Officer Date: _____

**Attachments:**                             Address:_____
1. Stock Option Agreement
2. 2012 Equity Incentive Plan                Taxpayer ID: _____
* See Sections 3, 4 and 5 of the Stock Option Agreement.

## NEXTCARE HOLDINGS, INC. 2012 EQUITY INCENTIVE PLAN
## STOCK OPTION GRANT NOTICE

NextCare Holdings, Inc. (the "Company") hereby grants to you an Option (the "Option") to purchase shares of the Company's Common Stock under the Company's 2012 Equity Incentive Plan (the "Plan"). The Option is subject to all the terms and conditions set forth in this Stock Option Grant Notice (this "Grant Notice") and in the Stock Option Agreement and the Plan, which are attached to and incorporated into this Grant Notice in their entirety.

| | |
|---|---|
| **Participant:** | Michael Marino |
| **Grant Date:** | October __, 2015 |
| **Vesting Commencement Date:** | July 1, 2015 |
| **Number of Shares Subject to Option:** | 5,000 |
| **Exercise Price (per Share):** | $0.68 |
| **Option Expiration Date:** | 10 years from the Grant Date (subject to earlier termination in accordance with the terms of the Plan and the Stock Option Agreement) |
| **Type of Option:** | ☐ Incentive Stock Option *■ Nonqualified Stock Option |

**Vesting and Exercisability Schedule:** The Option will vest and become exercisable as follows: one-third ($1/3$) of the shares subject to the Option will vest and become exercisable on each of the first three anniversaries of the Vesting Commencement Date (*i.e.*, this Option will be fully vested after 36 months from the Vesting Commencement Date), provided that you have not had a Termination of Service prior to any such date. In the event of a Change of Control, all of the unvested shares subject to the Option will automatically vest in full immediately prior to the consummation of the Change of Control.

**Additional Terms/Acknowledgement:** You acknowledge receipt of, and understand and agree to, this Grant Notice, the Stock Option Agreement and the Plan. You further acknowledge that as of the Grant Date, this Grant Notice, the Stock Option Agreement and the Plan set forth the entire understanding between you and the Company or any Related Company regarding the Option and supersede all prior oral and written agreements on the subject.

| | |
|---|---|
| NEXTCARE HOLDINGS, INC. | PARTICIPANT |
| By: _____ | *[signature]* |
| Name: John M. Julian | MICHAEL MARINO |
| Title: President and Chief Executive Officer | Date: _____ |
| **Attachments:** | Address: _____ |
| 1. Stock Option Agreement | _____ |
| 2. 2012 Equity Incentive Plan | Taxpayer ID: _____ |
| * See Sections 3, 4 and 5 of the Stock Option Agreement. | |

127927267.1

## NEXTCARE HOLDINGS, INC. 2012 EQUITY INCENTIVE PLAN

### STOCK OPTION GRANT NOTICE

NextCare Holdings, Inc. (the "Company") hereby grants to you an Option (the "Option") to purchase shares of the Company's Common Stock under the Company's 2012 Equity Incentive Plan (the "Plan"). The Option is subject to all the terms and conditions set forth in this Stock Option Grant Notice (this "Grant Notice") and in the Stock Option Agreement and the Plan, which are attached to and incorporated into this Grant Notice in their entirety.

| | |
|---|---|
| **Participant:** | Michael Marino |
| **Grant Date:** | January 14, 2014 |
| **Vesting Commencement Date:** | June 1, 2013 |
| **Number of Shares Subject to Option:** | 40,000 |
| **Exercise Price (per Share):** | $0.06 |
| **Option Expiration Date:** | 10 years from the Grant Date (subject to earlier termination in accordance with the terms of the Plan and the Stock Option Agreement) |
| **Type of Option:** | ☐ Incentive Stock Option *■ Nonqualified Stock Option |

**Vesting and Exercisability Schedule:** The Option will vest and become exercisable as follows: one-third (1/3) of the shares subject to the Option will vest and become exercisable on each of the first three anniversaries of the Vesting Commencement Date (i.e., this Option will be fully vested after 36 months from the Vesting Commencement Date), provided that you have not had a Termination of Service prior to any such date. In the event of a Change of Control, all of the unvested shares subject to the Option will automatically vest in full immediately prior to the consummation of the Change of Control.

**Additional Terms/Acknowledgement:** You acknowledge receipt of, and understand and agree to, this Grant Notice, the Stock Option Agreement and the Plan. You further acknowledge that as of the Grant Date, this Grant Notice, the Stock Option Agreement and the Plan set forth the entire understanding between you and the Company or any Related Company regarding the Option and supersede all prior oral and written agreements on the subject.

NEXTCARE HOLDINGS, INC.                     PARTICIPANT

By: _____           _____
Name: John M. Julian                        Michael Marino
Title: President and Chief Executive Officer Date: 6-1-14

Attachments:                                Address: 2728 McKinnon St Apt 1423
1. Stock Option Agreement                            Dallas, TX 75210
2. 2012 Equity Incentive Plan               Taxpayer ID: _____

* See Sections 3, 4 and 5 of the Stock Option Agreement.

## NEXTCARE HOLDINGS, INC. 2012 EQUITY INCENTIVE PLAN
## STOCK OPTION GRANT NOTICE

NextCare Holdings, Inc. (the "Company") hereby grants to you an Option (the "Option") to purchase shares of the Company's Common Stock under the Company's 2012 Equity Incentive Plan (the "Plan"). The Option is subject to all the terms and conditions set forth in this Stock Option Grant Notice (this "Grant Notice") and in the Stock Option Agreement and the Plan, which are attached to and incorporated into this Grant Notice in their entirety.

| | |
|---|---|
| **Participant:** | Michael Marino |
| **Grant Date:** | November 1, 2016 |
| **Vesting Commencement Date:** | November 1, 2016 |
| **Number of Shares Subject to Option:** | 18,442 |
| **Exercise Price (per Share):** | $0.40 |
| **Option Expiration Date:** | 10 years from the Grant Date (subject to earlier termination in accordance with the terms of the Plan and the Stock Option Agreement) |
| **Type of Option:** | ☐ Incentive Stock Option  *☒ Nonqualified Stock Option |

**Vesting and Exercisability Schedule:** The Option will vest and become exercisable as follows: one-third ($^1/_3$) of the shares subject to the Option will vest and become exercisable on each of the first three anniversaries of the Vesting Commencement Date (*i.e.*, this Option will be fully vested after 36 months from the Vesting Commencement Date), provided that you have not had a Termination of Service prior to any such date. In the event of a Change of Control, all of the unvested shares subject to the Option will automatically vest in full immediately prior to the consummation of the Change of Control.

**Additional Terms/Acknowledgement:** You acknowledge receipt of, and understand and agree to, this Grant Notice, the Stock Option Agreement and the Plan. You further acknowledge that as of the Grant Date, this Grant Notice, the Stock Option Agreement and the Plan set forth the entire understanding between you and the Company or any Related Company regarding the Option and supersede all prior oral and written agreements on the subject.

NEXTCARE HOLDINGS, INC.                                PARTICIPANT

By: _____                              _____
Name: John M. Julian                                   Michael Marino
Title: President and Chief Executive Officer           Date: 11/5/16
**Attachments:**                                       Address: 2010 S. Corinth St. Apt. 3101
1. Stock Option Agreement                                       Corinth, TX 76210
2. 2012 Equity Incentive Plan                          Taxpayer ID: 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
* See Sections 3, 4 and 5 of the Stock Option
Agreement.

127927289.1

## NEXTCARE HOLDINGS, INC. 2012 EQUITY INCENTIVE PLAN

### STOCK OPTION AGREEMENT

Pursuant to your Stock Option Grant Notice (the "Grant Notice") and this Stock Option Agreement (this "Agreement"), NextCare Holdings, Inc. (the "Company") has granted you an Option under its 2012 Equity Incentive Plan (the "Plan") to purchase the number of shares of the Common Stock indicated in the Grant Notice (the "Shares") at the exercise price indicated in the Grant Notice. Capitalized terms not defined in this Agreement but defined in the Plan have the same definitions as in the Plan.

The details of the Option (as defined in the Grant Notice) are as follows:

1. Vesting and Exercisability. Subject to the limitations contained herein, the Option will vest and become exercisable as provided in the Grant Notice, provided that vesting will cease upon your Termination of Service and the unvested portion of the Option will terminate.

2. Securities Law Compliance. Notwithstanding any other provision of this Agreement, you may not exercise the Option unless the Shares issuable upon exercise are registered under the Securities Act or, if such Shares are not then so registered, the Company has determined that such exercise and issuance would be exempt from the registration requirements of the Securities Act. The exercise of the Option must also comply with other applicable laws and regulations governing the Option, and you may not exercise the Option if the Company determines that such exercise would not be in material compliance with such laws and regulations.

3. Incentive Stock Option Qualification. If so designated in the Grant Notice, all or a portion of the Option is intended to qualify as an Incentive Stock Option under federal income tax law, but the Company does not represent or guarantee that the Option qualifies as such. If the Option has been designated as an Incentive Stock Option and the aggregate Fair Market Value (determined as of the Grant Date) of the shares of Common Stock subject to the portions of the Option and all other Incentive Stock Options you hold that first become exercisable during any calendar year exceeds $100,000, any excess portion will be treated as a Nonqualified Stock Option, unless the Internal Revenue Service changes the rules and regulations governing the $100,000 limit for Incentive Stock Options. A portion of the Option may be treated as a Nonqualified Stock Option if certain events cause exercisability of the Option to accelerate.

4. Notice of Disqualifying Disposition. To the extent the Option has been designated as an Incentive Stock Option, to obtain certain tax benefits afforded to Incentive Stock Options, you must hold the Shares issued upon the exercise of the Option for two years after the Grant Date and one year after the date of exercise. By accepting the Option, you agree to promptly notify the Company if you dispose of any of the Shares within one year from the date you exercise all or part of the Option or within two years from the Grant Date.

5. Alternative Minimum Tax. You may be subject to the alternative minimum tax at the time of exercise of an Incentive Stock Option.

6. Independent Tax Advice. You should obtain tax advice when exercising the Option and prior to the disposition of the Shares.

7. Method of Exercise. You may exercise the Option by giving written notice to the Company, in form and substance satisfactory to the Company (the "Exercise Notice"), which will state

your election to exercise the Option and the number of Shares for which you are exercising the Option. The Exercise Notice must be accompanied by full payment of the exercise price for the number of Shares you are purchasing. You may make this payment in any combination of the following: (a) by cash; (b) by check acceptable to the Company; (c) if permitted by the Plan Administrator for Nonqualified Stock Options, having the Company withhold shares of Common Stock that would otherwise be issued on exercise of the Option that have a Fair Market Value on the date of exercise of the Option equal to the exercise price of the Option; (d) if permitted by the Plan Administrator, by using shares of Common Stock you already own; (e) if the Common Stock is registered under the Exchange Act and to the extent permitted by law, by instructing a broker to deliver to the Company the total payment required, all in accordance with the regulations of the Federal Reserve Board; or (f) by any other method permitted by the Plan Administrator.

8. Repurchase Rights; First Refusal Rights; Transfer Restrictions. So long as the Common Stock is not registered under the Exchange Act, the Company may, in its sole discretion at the time of exercise, require you to sign a stock purchase agreement or a stockholders agreement, each in the form to be provided, pursuant to which you will grant to the Company certain repurchase and first refusal rights to purchase the Shares acquired by you upon exercise of the Option and will agree to the terms of co-sale and drag-along rights applicable to the Shares. Upon request to the Company, you may review a current form of any applicable agreement(s) prior to exercise of the Option.

9. Market Standoff. You agree that any Shares received upon exercise of the Option will be subject to the market standoff restrictions on transfer set forth in the Plan.

10. Treatment Upon Termination of Employment or Service Relationship. The unvested portion of the Option will terminate automatically and without further notice immediately upon your Termination of Service. You may exercise the vested portion of the Option as follows:

(a) General Rule. In the event of your Termination of Service by your employer (or the party to whom you provide service) other than for Cause, you must exercise the vested portion of the Option on or before the earlier of (i) three months after your Termination of Service and (ii) the Option Expiration Date (as defined in the Grant Notice);

(b) Disability. In the event of your Termination of Service due to Disability, you must exercise the vested portion of the Option on or before the earlier of (i) six months after your Termination of Service and (ii) the Option Expiration Date;

(c) Death. In the event of your Termination of Service due to your death, the vested portion of the Option must be exercised on or before the earlier of (i) six months after your Termination of Service and (ii) the Option Expiration Date. If you die after your Termination of Service but while the Option is still exercisable, the vested portion of the Option may be exercised until the earlier of (x) six months after the date of death and (y) the Option Expiration Date; and

(d) Cause. The vested portion of the Option will automatically expire at the time you are first notified of your Termination of Service for Cause, unless the Plan Administrator determines otherwise. If your employment or service relationship is suspended pending an investigation of whether you will be terminated for Cause, all your rights under the Option likewise will be suspended during the period of investigation. If any facts that would constitute termination for Cause are discovered after your Termination of Service, any Option you then hold may be immediately terminated by the Plan Administrator.

(e) <u>Voluntary</u>. The vested portion of the Option will automatically expire at the time the Company is notified of your voluntary Termination of Service.

To qualify for the beneficial tax treatment afforded Incentive Stock Options, if applicable, the Option must be exercised within three months after termination of employment for reasons other than death or disability and one year after termination of employment due to disability. For purposes of the preceding, "disability" has the meaning attributed to that term for purposes of Section 422 of the Code.

**It is your responsibility to be aware of the date the Option terminates.**

11. <u>Limited Transferability</u>. During your lifetime only you can exercise the Option. The Option is not transferable except by will or by the applicable laws of descent and distribution. The Plan provides for exercise of the Option by a beneficiary designated on a Company-approved form or the personal representative of your estate. Notwithstanding the foregoing and to the extent permitted by the Plan and Section 422 of the Code, the Plan Administrator, in its sole discretion, may permit you to assign or transfer the Option, subject to such terms and conditions as specified by the Plan Administrator.

12. <u>Withholding Taxes</u>. As a condition to the exercise of any portion of the Option, you must make such arrangements as the Company may require for the satisfaction of any federal, state, local or foreign tax withholding obligations that may arise in connection with such exercise.

13. <u>Option Not an Employment or Service Contract</u>. Nothing in the Plan or this Agreement will be deemed to constitute an employment contract or confer or be deemed to confer any right for you to continue in the employ of, or to continue any other relationship with, the Company or any Related Company or limit in any way the right of the Company or any Related Company to terminate your employment or other relationship at any time, with or without Cause.

14. <u>No Right to Damages</u>. You will have no right to bring a claim or to receive damages if you are required to exercise the vested portion of the Option within three months (six months in the case of Disability or death) of your Termination of Service or if any portion of the Option is cancelled or expires unexercised. The loss of existing or potential profit in the Option will not constitute an element of damages in the event of your Termination of Service for any reason even if the termination is in violation of an obligation of the Company or a Related Company to you.

15. <u>Binding Effect</u>. This Agreement will inure to the benefit of the successors and assigns of the Company and be binding upon you and your heirs, executors, administrators, successors and assigns.

16. <u>Section 409A Compliance</u>. Notwithstanding any provision in the Plan or this Agreement to the contrary, the Plan Administrator may, at any time and without your consent, modify the terms of the Option as it determines appropriate to avoid the imposition of interest or penalties under Section 409A of the Code; provided, however, that the Plan Administrator makes no representations that the Option shall be exempt from or comply with Section 409A of the Code and makes no undertaking to preclude Section 409A of the Code from applying to the Option.

17. <u>Restrictive Covenants</u>. You acknowledge and agree that, in consideration for the Company's grant of the Option to you, you are bound by all of the restrictive covenants described in this <u>Section 17</u>. The Option will immediately terminate if you violate the terms of any restrictive covenant or agreement entered into between you and the Company or a Related Company at any time, whether contained in this <u>Section 17</u> or otherwise.

(a) <u>Confidential Information</u>. You acknowledge that on the Grant Date you are in possession of and thereafter will receive confidential information of the Company and Related Companies that the Company considers to be valuable trade secrets. Except as permitted by the Board or by Company policies approved by the Board, during your employment with the Company and at all times thereafter, you shall not divulge, furnish or make accessible to anyone or use in any way other than in the ordinary course of the business of the Company and its subsidiaries, any confidential, proprietary or secret knowledge or information of the Company or any of Related Company that you have acquired or shall acquire during you employment with the Company, whether developed by yourself or by others, concerning (i) any trade secrets of the Company or its Related Companies; (ii) any confidential, proprietary or secret designs, processes, formulae, plans, devices or material (whether or not patented or patentable) directly or indirectly useful in any aspect of the business of the Company or its Related Companies; (iii) any customer or supplier lists of the Company or its Related Companies; (iv) any confidential, proprietary or secret development or research work of the Company or its Related Companies; (v) any strategic or other business, marketing or sales plans of the Company or its Related Companies; (vi) any financial data or plans respecting the Company or its Related Companies; or (vii) any other confidential or proprietary information or secret aspects of the business of the Company or its Related Companies. You acknowledge that the above-described knowledge and information constitutes a unique and valuable asset of the Company or its Related Companies, as applicable, and represents a substantial investment of time and expense by the Company or its Related Companies, as applicable, and that any disclosure or other use of such knowledge or information other than for the sole benefit of the Company or its Related Companies, as applicable, would be wrongful and would cause irreparable harm to the Company or its Related Companies, as applicable. You shall refrain from any acts or omissions that would reduce the value of such knowledge or information to the Company or its Related Companies, as applicable. The foregoing obligations of confidentiality shall not apply to any knowledge or information that (i) is now or subsequently becomes generally publicly known in the form in which it was obtained from the Company, other than as a direct or indirect result of the breach of this Agreement by you, or (ii) is required to be disclosed by legal process. Your obligations in this <u>Section 17(a)</u> shall survive the Termination of Service.

(b) <u>Ventures; Intellectual Property</u>. If, during your employment with the Company, you are engaged in or associated with the planning or implementing of any project, program, or venture involving the Company or its Related Companies and a third party or parties, all rights in such project, program, or venture shall belong to the Company or its Related Companies, as applicable. Except as approved in writing by the Board, you shall not be entitled to any interest in any such project, program, or venture or to any commission, finder's fee, or other compensation in connection therewith. Except as expressly permitted by <u>Section 17(c)</u>, you shall have no interest, direct or indirect, in any customer or supplier that conducts business with the Company or its Related Companies, unless such interest has been disclosed in writing to and approved by the Board before such customer or supplier seeks to do business with the Company or its Related Companies, as applicable. All know-how, improvements and inventions, whether or not patentable, and trade secret information conceived or originated by you that arise during your employment with the Company or out of the performance of your duties and responsibilities thereunder or any related material or information shall be the property of the Company, and all rights therein are hereby assigned by you to the Company. All right, title, and interest in all copyrightable material that you shall conceive or originate individually or jointly or commonly with others, and that arise during your employment with the Company or out of the performance of your duties and responsibilities thereunder, shall be the property of the Company, shall be considered "works made for hire," as defined in the U.S. Copyright Act, and are hereby assigned by you to the Company, along with ownership of any and all copyrights in the copyrightable material. You shall execute any and all instruments and perform all other acts necessary in furtherance of this <u>Section 17(b)</u>, including without limitation, all actions necessary to file patent applications and to register copyrights on behalf of the Company. Your obligations in this <u>Section 17(b)</u> shall survive the termination of your employment.

4

    (c)    <u>Nonsolicitation</u>.

        (i)    For purposes of this <u>Section 17(c)</u>, (A) the term "<u>Restricted Business</u>" means any business activity or enterprise that competes with the Company or any of its Related Companies or any services or other activity (or any substantially similar service, activity or line of business) related to the development, delivery or management of urgent care, family practice, workers compensation-related, or emergency medical services and (B) the term "<u>Person</u>" means and includes an individual, a partnership, a joint venture, a corporation, a trust, an association, a limited liability company, an unincorporated organization and any other entity, and a government or any department, political subdivision or agency thereof.

        (ii)    You covenant and agree that during your employment with the Company and for two (2) years thereafter (the "<u>Restricted Period</u>"), you will not on behalf of yourself or directly or indirectly through another Person (including without limitation as a proprietor, owner, principal, agent, partner, officer, director, stockholder, employee, manager, member, consultant or otherwise):

        (A)    solicit, divert, take away, or otherwise attempt in any manner to solicit, divert, or take away, the business of any customer, supplier or other business relation of the Company or any of its Related Companies that you know, or reasonably should know, is a customer, supplier or other business relation of the Company, for a purpose that is related to a Restricted Business, or in any way interfere with the relationship between any such customer, supplier or other business relation and the Company or any of its Related Companies (including, without limitation, inducing such Person to cease doing business with the Company or any of its Related Companies or making any negative statements or communications about the Company or any of its Related Companies);

        (B)    hire, engage, employ, solicit, take away, induce or attempt to hire, engage, solicit, take away or induce (either on your behalf or on behalf of any other Person) any Person who you know, or reasonably should know, is then an employee or contractor of the Company or any of its Related Companies or who was an employee or contractor of the Company or any of its Related Companies (with respect to the Company's or any of its Related Companies' business) at any time during the six-month period immediately preceding termination of your employment with the Company, if applicable; provided, however, the restrictions in this <u>Section 17(c)(ii)</u> shall not apply to (1) any contractor who or which has provided services to the other Person prior to the Termination Date, or (2) any individual whose employment was previously terminated by the Company or any of its Related Companies and, provided, further, the foregoing shall not apply to any general solicitation conducted through the use of advertisements in the media, through the use of search firms or other routine recruiting activities, provided that such searches are not specifically targeted at employees of the Company or any of its Related Companies and that any Person who you are otherwise precluded from hiring, engaging, employing, soliciting or taking away under this <u>Section 17(c)(ii)</u> is not hired to fill such open position; or

        (C)    directly or indirectly (1) acquire or attempt to acquire any existing business of the Company or any of its Related Companies, (2) acquire or attempt to acquire any potential acquisition target of the Company (an "<u>Acquisition Target</u>") that you know, or reasonably should know, the Company intends to pursue or is interested pursuing, or (3) take any action to induce or attempt to induce any Acquisition Target to consummate any acquisition, investment or other similar transaction with any Person other than the Company or any of its Related Companies.

Nothing herein shall prohibit you from (A) being a passive owner of not more than 1% of the outstanding stock of any class of securities of any Person listed on a national securities exchange that is engaged in a Restricted Business, so long as you have no active participation in the Restricted Business of such Person

and do not serve on the board of directors or similar body of such Person, or (B) performing any services to the Company or its subsidiaries or that are otherwise permitted hereunder.

(iii)  You and the Company hereby agree and acknowledge that the Company's business is global in nature and therefore the geographic scope of the nonsolicitation covenants set forth in Section 17(c)(ii) is reasonable, necessary and appropriate in light of the nature of the Company's business.

(iv)  If the duration or scope of, or any business activity covered by, any provision of this Section 17(c) is in excess of what is determined to be valid and enforceable under applicable law, such provision shall be construed to cover only that duration, scope or activity that is determined to be valid and enforceable. You hereby acknowledge that this Section 17(c) shall be given the construction that renders its provisions valid and enforceable to the maximum extent, not exceeding its express terms, possible under applicable law.

(v)  You acknowledge and affirm that a breach of Section 17(c)(ii) by you cannot be adequately compensated in an action for damages at law, and equitable relief would be necessary to protect the Company and its Related Companies from a violation of this Section 17(c) and from the harm that this Section 17(c) is intended to prevent. Accordingly, you agree that in the event of any actual or threatened breach of such provisions, the Company and its Related Companies shall (in addition to any other remedies that they may have) be entitled to enforce their rights and your obligations under this Section 17(c) not only by an action or actions for damages, but also by an action or actions for specific performance, temporary or permanent injunctive relief or other equitable relief in order to enforce or prevent any violations (whether anticipatory, continuing or future) of the provisions of this Section 17(c) (including the extension of the Restricted Period by a period equal to (A) the length of the violation of this Section 17(c), plus (B) the length of any court proceedings necessary to stop such violation) and recover attorneys' fees and costs for the same, and such relief may be granted without the necessity of proving actual damages or the inadequacy of money damages, or posting bond. In the event of a breach or violation by you of this Section 17(c), the running of the Restricted Period (but not your obligations under this Section 17(c)) shall be tolled with respect to you during the continuance of any actual breach or violation, but in no event will the Restricted Period be less than two (2) years.

(vi)  You agree that your obligations under this Section 17(c) shall survive the termination or expiration of this Agreement and your Termination of Service, except by express agreement of you and the Company, whether or not you are terminated with or without Cause, or whether such termination is at the your instance or occurs before or after expiration of the Option Term.



July 14, 2017

Michael Marino

Pursuant to the authorization provided to me by the Board of Directors of NextCare Holdings, Inc., the time for you to exercise your right to purchase the Stock Options awarded to you under the 2012 Equity Incentive Plan of NextCare Holdings, Inc. and vested as of your last day of employment with NextCare, Inc. is extended three (3) years from the date your employment with NextCare Inc. was terminated. (Termination Date: April 14, 2017)

Any Options vested as of your termination date must be exercised on or before the date referenced above by providing an Exercise Notice pursuant to the 2012 Equity Incentive Plan of NextCare Holdings, Inc. along with full payment for all sums then due.

John Julian, President & CEO
NextCare, Inc.

      

1138 North Alma School Road, Ste.120, Mesa, AZ 85201 | 1.888.381.4858 | www.nextcare.com